UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| **ARMANDO P. IBANEZ,** *Plaintiff,* § § § § | |
| v. § § | **CIVIL ACTION NO:**_____ |
| **TEXAS A&M UNIVERSITY KINGSVILLE,** *Defendant.* § § § § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff Armando P. Ibanez, in support of his claims against Texas A&M University at Kingsville, or "TAMUK" (hereinafter "Defendant"), and respectfully states:

### NATURE OF THE ACTION

1) This is an employment discrimination case brought by the Plaintiff, who was formerly on the TAMUK faculty. The case is advanced under Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 1981. Plaintiff was denied promotion and tenure, then terminated by TAMUK after seven (7) years of service. Plaintiff alleges discrimination based on race and national origin against TAMUK. Specifically, TAMUK President Mark Hussey overruled the May 20, 2020, Findings and Conclusions of the Tenure Appeal Committee in Plaintiff's case. That Committee, after an evidentiary hearing, concluded as follows:

> "The majority of the committee members find that Mr. Armando P. Ibanez met university, college, and departmental expectations in teaching, scholarly activity, professional growth, and service. The committee noted that his scholarly body of work was impressive accounting for his winning numerous awards. These accomplishments were achieved despite key personnel

> shortages in his program that rendered it necessary for Mr. Ibanez to take on additional administrative and technical responsibilities. The committee noted that Mr. lbanez's department lacks formal guidelines for evaluating scholarly work in the area of film production. At one point Mr. Todd Lucas acknowledged this fact in his testimony. In summary, Mr. Armando P. Ibanez is an asset to the university and has earned tenure and promotion."

## JURISDICTION AND VENUE

2) This Court has jurisdiction under 28 U.S.C. §1331 and §1343 because this action presents federal questions. Venue is proper pursuant to 28 U.S.C. §1391 because the events made the basis of this lawsuit occurred within the geographical boundaries of the United States District Court for the Southern District of Texas, Corpus Christi Division.

## STATEMENT OF FACTS IN SUPPORT OF CLAIMS

3) Plaintiff's name is Armando P. Ibanez. Plaintiff is a seventy-two-year-old Mexican American male residing in Kingsville, Texas.

4) Plaintiff is a Roman Catholic priest in good standing and is also a Friar as a member of the Dominican Order.

5) Plaintiff was hired on September 1, 2014, by Texas A&M University-Kingsville (hereafter, "TAMUK").

6) Plaintiff was hired as Assistant Professor, Director of Radio, Television & Film. Plaintiff was hired by Dr. Manuel Flores, the incumbent Chair of the Art, Communication and Theatre Department (ACT), and Dr. Abbey Zink, Dean of College of Arts & Sciences. Dr. Flores was Plaintiff's immediate supervisor.

7) Plaintiff's salary at the time he was hired was $55,000 per year on a nine-month contract beginning Sept. 1, 2014, although Plaintiff reported to work early in August 2014 to attend faculty meetings and prepare for classes in the fall semester.

## PLAINTIFF'S QUALIFICATIONS AND BACKGROUND

8) Plaintiff earned a Master of Fine Arts Degree (MFA) in producing television and film from The American Film Institute. He also received his Master of Arts (MA) in Theology, and Master of Divinity from the Dominican School of Philosophy & Theology, Graduate Theological Union in Berkley, California.

9) Plaintiff is an award-winning independent filmmaker, with twenty-five (25) film awards listed on the Internet Movie Database (IMDb.com), the authoritative website about filmmakers and films. Plaintiff's latest feature film, *South Texas Gentle Men of Steel – Los Padres*, released in 2015, which won twenty-four (24) awards, was the only film invited to be screened at the Dominican Jubilee Congress as part of the 800th Jubilee of the Order of Preachers held in Salamanca, Spain, Sept. 1-5, 2016. It was also screened at the Jakarta International Humanitarian & Culture Festival, where it won a Platinum Award in the Documentary category, and at the Magnificat Film Festival, held in Belarus in 2015. Plaintiff, along with two of his fellow faculty members, Drs. Manuel Flores and Patrick Faherty, and Laurie Diane Guajardo, President of the Texas A&M University-Kingsville Film Society, created the Blazing Sun Independent Film Shorts Festival, with Plaintiff serving as Founding Festival Director. The inaugural festival was held March 4-5, 2020 and received a large submission of forty-nine (49) films—twenty-nine (29) of those were domestic films, and the remaining twenty were foreign films, from countries such as New Zealand, Canada, India, Egypt, Qatar, United Arab Emirates, Russian Federation and Iran.

10) The Texas A&M University-Kingsville Film Society is comprised largely of Plaintiff's former students, a large majority of whom are Hispanic. Plaintiff has helped this group of students function as an organization on campus and served as their faculty advisor until he was

terminated. A group of his former students won awards at the Corpus Christi 7-Day Film Festival in 2018 and again in 2019. In a news release, the President of the Texas A&M University - Kingsville Film Society stated, "This would not have been possible without the support of the University… and the encouragement and guidance of Professor Ibanez."

11) Plaintiff was highlighted in the *Dictionary of Literary Biography's* 209th volume, "Chicano Writers", in 2001. In 2019, Plaintiff was recognized as a filmmaker and poet in an international reference book featuring the work of accomplished Dominican artists entitled *Call and Response: American Dominican Artists and Vatican II*. Plaintiff was awarded the *Fra Angelico Award for Excellence in Art* for outstanding contributions in poetry and film by the Dominican Institute for the Arts (DIA) in 2002.

12) Plaintiff was hired to teach production courses primarily in film and television, to serve as Director of Student Productions, as well as Director of Radio, Television and Film, and to continue to conduct his scholarly research and creative activities in film.

## DEFENDANT TAMUK FAILS HISPANICS

13) TAMUK is a component of the Texas A&M University system. It claims to be a Hispanic-serving institution for students and faculty. But, even at the very highest levels of administration, the University has noted its failings to Hispanic faculty. On August 7, 2020, the Hispanic Faculty Council of TAMUK sent a letter to President Mark Hussey and Provost Lou Reinisch. That letter addressed the poor performance of TAMUK serving Hispanic populations of students and faculty in terms of equity, diversity, and inclusivity. That letter specifically refers to TAMUK as not being exempt from, "systemic discrimination". In his reply to the Hispanic Faculty Council, dated August 7, 2020, the Provost, Dr. Lou Reinish, went so far as to say:

> "I agree with the concerns expressed in your letter. Yes, our faculty profile should reflect our student profile. Yes, there are qualified Hispanic candidates for faculty and administrative positions who are often overlooked. We need to solve these problems. I am certain that Dr. Hussey is also in agreement."

## DEFENDANT TAMUK'S DISCRIMINATED AGAINST PLAINTIFF AS PART OF A SYSTEMIC PATTERN WHEN HE WAS DENIED PROMOTION AND TENURE AND TERMINATED

14) In the 2020–21 faculty promotion cycle, TAMUK promoted 12 professors who were not Mexican American. The only professor in that cycle who was not promoted was Plaintiff who is Mexican American.

15) In the same cycle, three (3) Tenure Appeals Committees from the College of Arts and Sciences ruled in favor of each professor obtaining tenure. In two of those appeals President Hussey upheld the decisions of the Appeal Committees in favor of white professors obtaining tenure. At the same time, President Hussey overruled the above-quoted findings praising Plaintiff's achievements and ruling that Plaintiff, as an asset to the University, should be granted tenure.

16) There was an unusual depth of support in the University community, for Plaintiff's efforts to be promoted, obtain tenure, and remain employed. In addition to the Findings and Conclusions of the Tenure Appeal Committee quoted above, the Departmental Tenure Review Committee, colleagues the most familiar with Plaintiff's work, voted in favor of tenure for Plaintiff. The Student Government Association passed a resolution in favor of the Plaintiff's tenure specifically calling for President Hussey to uphold the findings and conclusions of the tenure appeal committee in favor of Plaintiff. In addition, the Student Government association called for an audit of student services fees paid by TAMUK's students, which were withheld from Plaintiff's program in fiscal years 2015 through 2020. Further, the Hispanic Faculty Council deemed the actions of Defendant to be an "injustice".

17) Plaintiff alleges that he was not appropriately supported financially by TAMUK. At the end of his employment Plaintiff was denied tenure and terminated as a result of personal bias as well as systemic bias against Mexican American faculty and in favor of non-Mexican Americans.

## LEGAL CLAIM

18) Plaintiff adopts and incorporates herein by reference all preceding paragraphs. All administrative prerequisites to the filing of this lawsuit have been exhausted.

19) Defendant took discriminatory actions against Plaintiff in violation of Title VII of the Civil Rights Act of 1964 as amended, and 42 U.S.C. § 1981, personally and as part of a systemic pattern of race and national origin discrimination.

20) The unlawful employment practices complained of herein were done with reckless indifference to Plaintiff's federal civil rights.

## JURY DEMAND

21) The Plaintiff demands a trial by jury as to all issues so triable in this action.

## PRAYER

Plaintiff respectfully prays that the Court enter Judgment in his favor and against Defendant, and award Plaintiff the following:

    a) Actual damages plus interest including, but not limited to, wage loss, loss of employment opportunities and lost benefits, past and future, as allowed by law;

    b) Compensatory damages arising from emotional distress, loss of enjoyment of life, and other nonpecuniary losses, past and future, as allowed by law;

    c) All damages and relief as allowed under Title VII of the Civil Rights Act of 1964, as amended;

d) All damages and relief as allowed under 42 U.S.C. § 1981;

e) Attorney's fees, costs and injunctive relief necessary to eradicate the effects of its unlawful employment practices in the form of reinstatement, or alternatively, front pay, having Plaintiff's employment record cleared of negative and false information and any other relief as allowed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 1981, and as otherwise allowed by law;

f) Prejudgment interest as allowed by law;

g) Post-judgment interest as allowed by law;

h) Attorney's fees as allowed by law;

i) Court costs and expenses as allowed by law;

j) All other relief, both special and general, at law and in equity, to which Plaintiff may be justly entitled.

Respectfully Submitted,

*/s/ John E. Schulman*
John E. Schulman, Esq.
State Bar No. 17833500
jschulman@schulmanlaw.com
Margaret K. Schulman, Esq.
State Bar No. 17833900
mschulman@schulmanlaw.com
**THE SCHULMAN LAW FIRM, P.C.**
6440 N. Central Expressway, Suite 210
Dallas, TX 75206
Tel: 214-361-2580
Fax: 214-361-6580
**ATTORNEYS FOR PLAINTIFF**